UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT

- - - - - - - - - - - - - - - - - - - - - - - - - - - - -
                                                )
IN RE:                                          )    CASE NO.           09-30226 (LMW)
                                                )
 CHARLES R. RIEMANN and                         )    CHAPTER            7
 MARICELE C. RIEMANN,                           )
                                                )    DOC. I.D. NO.      14
            DEBTORS.                            )
- - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**APPEARANCES**

Barbara H. Katz, Esq.                                               Chapter 7 Trustee
57 Trumbull Street
New Haven, CT 06510

Joseph J. D'Agostino, Jr., Esq.                                     Attorney for the Debtors
1062 Barnes Road, Suite 304
Wallingford, CT 06492

**MEMORANDUM OF PARTIAL DECISION AND
ORDER RE: TRUSTEE'S OBJECTION TO AMENDED EXEMPTION**

Lorraine Murphy Weil, United States Bankruptcy Judge

      This matter requires the court to apply 11 U.S.C. § 522(d)(5) in the context of Connecticut's somewhat unusual law in respect of joint bank accounts. The matter before the court is the chapter 7 trustee's (the "Trustee") objection (Doc. I.D. No. 14, the "Objection")[1] to debtor Maricele C. Riemann's ("Mrs. Riemann") attempt to exempt a portion of a certain joint bank account that Mrs. Riemann coheld with her debtor husband ("Mr. Riemann", collectively with Mrs. Riemann, the "Debtors") prepetition. The court has jurisdiction over this contested matter as a core proceeding pursuant to 28 U.S.C. §§ 157(b) and 1334(b) and that certain Order dated September 21, 1984 of this

---

    [1]    Citations herein to the docket of this chapter 7 case appear in the following form: "Doc. I.D. No. ___."

District (Daly, C.J.).[2]  This memorandum constitutes the findings of fact and conclusions of law to the extent mandated by Rule 7052 and 9014 of the Federal Rules of Bankruptcy Procedure.

## I.  FACTS

At this stage of the proceedings, relevant facts are set forth as follows.  The Debtors filed a joint petition for relief (together with their bankruptcy schedules) pursuant to chapter 7 of the United States Bankruptcy Code on January 31, 2009.  (*See* Doc. I.D. No. 1.)  Barbara H. Katz was appointed Trustee of the estates created when the petition was filed.  The Debtors disclosed in Schedule B (Personal Property) that they had a joint bank (checking) account (the "Account") with Liberty Bank containing $12,748.98.  Schedule C (Property Claimed As Exempt) claimed an exemption in the stated amount of $6,374.49 of this amount from the bankruptcy estate pursuant to 11 U.S.C. § 522(d)(5).[3]

Prior to the meeting of creditors pursuant to Bankruptcy Code § 341(a) (the "Meeting"), the Debtors provided to the Trustee their payment advices for the 60 days prior to the filing of their chapter 7 petition and their bank statements showing the balance in their bank accounts as of the filing date.  Mrs. Riemann does not work outside of the home.  The payment advices show that, on January 28, 2009, Mr. Riemann received from his employer a net commission of $15,113.83 and regular bi-weekly net pay of $3,465.53 (collectively, the "Income").  The bank statement for the Account revealed that, on January 31, 2009, $21,290.76 was on deposit in the Account.

---

[2] That order referred to the "Bankruptcy Judges for this District" *inter alia* "all proceeding arising under Title 11, U.S.C., or arising in . . . a case under Title 11, U.S.C. . . . ."

[3] Schedule C did not differentiate between the Debtors or the estates with respect to the claimed exemption.

The Meeting was conducted on March 24, 2009. The Trustee stated at the Meeting that she believed that Mrs. Riemann was not entitled to claim an exemption in the Account since the funds in that account came solely from Mr. Riemann. On March 30, 2009, the Debtors filed an amended Schedule B (Personal Property) increasing the amount in the Account to $21,290.76. (*See* Doc. I.D. No. 11.) Mr. Riemann filed an amended Schedule C (Property Claimed as Exempt) in which he claimed as exempt $9,631.13 of Account funds pursuant to 11 U.S.C. § 522(d)(5). (*See id.*) Mrs. Riemann also filed an amended Schedule C (Property Claimed as Exempt) in which she claimed as exempt $9,631.13 of Account funds pursuant to 11 U.S.C. § 522(d)(5). Of the funds in the Account, $2,028.50 are conceded to be non-exempt.

The Trustee filed the Objection on April 3, 2009 asserting that Mrs. Riemann does not have an ownership interest in any Account funds. In the alternative, the Trustee asserted that the deposit of the Income into the Account was an avoidable fraudulent conveyance or preferential transfer from Mr. Riemann to Mrs. Riemann.

The Debtors and the Trustee stipulate that the money in the Account came solely from Mr. Riemann's Income. It also is stipulated that whatever interest Mrs. Riemann had in the Account "vested" prepetition. (*See* Doc. I.D. No. 27 at 2.)

**II.    ANALYSIS**

    **A.    Exemption Law**

Exemption is the process by which property is removed from the estate for the debtor's benefit. *See* 11 U.S.C. § 522.[4] *See also Lawrence v. Jahn (In re Lawrence),* 219 B.R. 786, 792

---

[4] Here, it is uncontested that the Account is property of Mrs. Riemann's estate. The parties probably reach that conclusion on different theories. Mrs. Riemann probably reasons that "her" portion of the Account is property of her estate pursuant to Bankruptcy Code §541(a).

(E.D. Tenn. 1998) ("Exempt[ed] property is subtracted from the bankruptcy estate and not distributed to creditors . . . [to ensure that the debtor] retains sufficient property to obtain a fresh start . . . ."). Generally speaking, at most a debtor may exempt only the debtor's interest in property which the debtor had at the commencement of the case. *See In re Cantrell,* 270 B.R. 551, 555 (Bankr. D. Conn. 2001). Property interests are determined under applicable state (here Connecticut) law. *Id.*

> A claimed exemption is "presumptively valid." 9 Collier on Bankruptcy, ¶ 4003.04 (15th ed. rev. 1998); *In re Patterson,* 128 B.R. 737, 740 (Bankr. W.D. Tex. 1991). . . . Once an exemption has been claimed, it is the objecting party's burden (the trustee in this case) to prove that the exemption is not properly claimed. *See* Fed. R. Bankr. P. 4003(c). Initially, this means that the objecting party has the burden of production and burden of persuasion. The objecting party must produce evidence to rebut the presumptively valid exemption. *In re Lester,* 141 B.R. 157, 161 (S.D. Ohio 1991). If the objecting party can produce evidence to rebut the exemption, the burden of production then shifts to the debtor to come forward with unequivocal evidence to demonstrate that the exemption is proper. *See In re Moneer,* 188 B.R. 25, 28 (Bankr. N.D. Ill. 1995); Fed. R. Evid. 301. The burden of persuasion, however, always remains with the objecting party . . . .

---

However, the noncontributing coholder's right to "manage" the account (*see Mahle* (as hereafter defined), *infra*) is not alone sufficient to bring the account into that coholder's bankruptcy estate pursuant to Bankruptcy Code § 541(a). *See Johnson v. Franklin U.S. Gov't Sec. Series-Class A (In re Johnson)*, 269 B.R. 324 (Bankr. M.D. Pa. 2001). On the other hand, the Trustee may reason that the Account is property of Mrs. Riemann's estate pursuant to Conn. Gen. Stat. § 52-367b and Bankruptcy Code § 544(a). *Cf. Fleet Bank Connecticut, N.A. v. Carillo,* 240 Conn. 343 (1997) (discussed more fully below, "*Carillo*") (judgment creditor of one account coholder may levy against the entire joint account (construing Conn. Gen. Stat. § 52-367b)); *Murray v. Guillot (In re Guillot),* 250 B.R. 570, 598 (Bankr. M.D. La. 2000) ("[Section] 544(a), through its creation of the 'rights and powers,' creates estate property as of the commencement of the case, to the extent applicable non-bankruptcy law would provide property interests to the hypothetical ideal lien creditor."). Moreover, it should be noted that in this case there are two estates (at least at this time): Mr. Riemann's estate and Mrs. Riemann's estate. *See In re Thomas,* 274 B.R. 450, 453 (E.D. Va. 2001), *aff'd,* 312 F.3d 145 (4th Cir. 2002); *see also Wornick v. Gaffney,* 544 F.3d 486, 491 (2d Cir. 2008). Any opinion as to the quality and/or extent of Mrs. Riemann's interest in the Account is not necessarily dispositive of the rights of the respective estates in the Account.

*Carter v. Anderson (In re Carter),* 182 F.3d 1027, 1029 n.3 (9th Cir. 1999). However, the debtor must establish a prima facie case as to the debtor's interest in the subject property. *See In re Cantrell,* 270 B.R. at 556 n.13.

### B. Connecticut Law Re: Joint Accounts

With respect to a noncontributing account coholder, that coholder usually is best understood as the agent for the contributing coholder with respect to use of the funds in the joint account: the noncontributing coholder has the right to "manage" the funds in the account. *See* L.R. Mahle, *A Purse of Her Own: The Case Against Joint Bank Accounts,* 16 Tex. J. Women & L. 45, 64-69 (Fall 2006) ("*Mahle*"). *Cf.* Conn. Gen. Stat. Ann. § 36a-290(a) (West 2009) ("any part or all of the balance of . . . [the joint] account, including any and all subsequent deposits or additions made thereto, may be paid to any of . . . [the coholders] during the lifetime of all of them . . . ."). By statute[5] in Connecticut, that management right by itself is a "sufficient property interest to permit a *judgment* creditor to exercise a bank execution, pursuant to § 52-367b, against the entire account." *Carillo*, 240 Conn. at 352 (emphasis in original).[6]

However, in Connecticut that "management" right in and of itself does not give the noncontributing coholder rights against the contributing coholder. Rather, the mere deposit of funds into a joint account does not itself create an ownership interest in the account. Connecticut follows

---

[5] *See* Conn. Gen. Stat. § 52-367b. Section 52-367b(a) provides in relevant part as follows: "Execution may be granted pursuant to this section against any debts due from any financial institution to a judgment debtor who is a natural person . . . ." Conn. Gen. Stat. Ann. 52-367b (West 2009). *Carillo* held that the phrase "any debts" as used in Section 52-367b includes the entire amount of the joint account balance as to judgment creditors of either or both account holders regardless of who contributed the funds in the account. *See Carillo, supra.*

[6] The majority rule among other states is that creditors of the noncontributing coholder cannot levy upon the joint account. *See Mahle* at 60.

the rule that (absent proof of *inter vivos* gift) he (or she) who contributed the funds continues to own the relevant deposit(s) in the joint account. *Grodzicki v. Grodzicki,* 154 Conn. 456 (1967). The mere fact of the joint account does not create a presumption or inference of *inter vivos* gift. *Id.* at 463. *Cf. Carillo*, 240 Conn. at 353 ("*In a conflict between coholders, . . .* § 36a-290 does not serve to convert the deposits made by one coholder into an intervivos gift to another coholder." (emphasis in original)).

### C.     Connecticut Law on Joint Accounts Applied in the Context of Section 522(d)(5)

Mrs. Riemann seeks to exempt "her share" in the Account pursuant to Section 522(b)(2) and Section 522(d)(5). Section 522(d)(5) provides in relevant part:

> The following property may be exempted under Subsection (b)(2) of this section:
> 
> . . .
> 
> (5) The *debtor's aggregate interest in any prop*erty, not to exceed in value $1,075 plus up to $10,125 of any unused amount of the exemption provided under paragraph (1) of this subsection . . . .

11 U.S.C.A. § 522(d) (West 2009) (emphasis added). Accordingly, the issue is whether Mrs. Riemann has an "interest" in the Account within the purview of Section 522(d)(5).

In *Carillo,* the husband and wife had a joint account. An assignee of the husband's judgment creditor levied upon all the funds in the account pursuant to a bank execution. The wife warned the bank that she would hold it liable for releasing "her" funds. The bank refused to comply with the bank execution and the assignee moved for turnover of account proceeds. The wife resisted. *Carillo*, 240 Conn. at 346. The assignee prevailed in the trial court. As noted above, on appeal the Connecticut Supreme Court held that the noncontributing coholder had a "sufficient property interest" in the joint account to allow such coholder's judgment creditors to levy upon the entire account. *Id.* at 352. However, that result was reached pursuant to a statute (*i.e.*, Section 52-367b)

generally acknowledged to be a "bank protection provision" which enables a bank to honor a valid bank execution without having to determine who contributed the funds in the subject account.[7] *See, e.g., Durso v. Vessichio,* 79 Conn. App. 112, 119 (2003). On the other hand, in *Grodzicki* neither judgment creditors of the account coholders nor the bank was involved. In *Grodzicki*, the Connecticut Supreme Court held that the noncontributing coholder's "sufficient property interest" in the joint account could not be enforced against the contributing coholder in a conversion action. *See Grodzicki, supra.* In other words, the noncontributing coholder's "sufficient property interest" cannot be enforced for her own benefit but only for the benefit of her judgment creditors.

The issue presented here is whether the noncontributing coholder's "sufficient property interest" articulated by the Connecticut Supreme Court in *Carillo* is an "interest in . . . property" within the purview of Section 522(d)(5). As noted above, a comparison of *Carillo* to *Grodzicki* demonstrates that the "sufficient property interest" is enforceable only for the benefit of the coholder's judgment creditors and not for the benefit of the coholder herself. Moreover, as discussed below, Section 522(g) does not apply to this situation. Accordingly, the court concludes that the noncontributing coholder's "sufficient property interest" (*see Carillo*) is not sufficient to constitute an "interest in . . . property" within the purview of Section 522(d)(5) and may not be exempted pursuant to that subsection.

### III.   APPLICATION OF LAW TO FACT

It is conceded that Mrs. Riemann contributed no funds to the Account. Accordingly, the mere fact of the joint account does not constitute a prima facie case as to Mrs. Riemann's interest in Account funds. Therefore, without proof of an *inter vivos* gift the Objection must be sustained.

---

[7]  Section 36a-290 also is (at least in part) a bank protection provision.

That is, the burden of production now rests on Mrs. Riemann to come forward with a prima facie case of an *inter vivos* gift.[8]

**IV.    FURTHER ACTION**

In light of the foregoing, a separate order will issue scheduling a status conference to consider procedural matters concerning (1) the issue of *inter vivos* gift and (2) the Trustee's argument that any *inter vivos* gift to Mrs. Riemann in respect of the Account is subject to avoidance under Chapter 5 of the Bankruptcy Code.

It is **SO ORDERED.**

Dated: October 7, 2009                                              BY THE COURT

                                                                    Lorraine Murphy Weil
                                                                    United States Bankruptcy Judge

---

[8] Assuming (but not deciding) that the Account is property of Mr. Reimann's estate pursuant to the Trustee's "ideal lien creditor rights" under Section 544(a)(1), Section 522(g) does not apply to that situation on its face. That is because (a) there is no "avoid[ance]" going on here within the purview of Bankruptcy Code § 550(a) (which section is listed in Section 522(g)) and (b) Section 544 is *not* listed in Section 522(g). However, Mrs. Riemann argues that, pursuant to statute, there is a presumption of Mr. Riemann's intent to "vest title to . . . [the A]ccount" in her, Conn. Gen. Stat. § 36a-290(b). However, that statutory presumption applies only when one of the account coholders is dead. *Durso,* 79 Conn. App. at 122. Mrs. Riemann's analogy to the law respecting joint tax refunds also is unavailing. *See In re Edwards,* 400 B.R. 345 (D. Conn. 2008) (Under Connecticut law, rights of codebtors in a joint tax refund are determined by allocating the prepetition portion of any refund between the debtor and her non-debtor spouse based on their respective tax withholdings.). Reserving Mrs. Riemann's rights with respect to the issue of *inter vivos* gift, the court finds her remaining arguments to be inapposite and/or otherwise unpersuasive.